# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BARBARA ANN MYRICK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW WHEELER,[1] ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:17-cv-2300 (TSC) |

## MEMORANDUM OPINION

Plaintiff Barbara Ann Myrick, proceeding *pro se*, has sued the Environmental Protection Agency ("EPA"), where she worked as a Program Assistant for the EPA's Program Assessment and Outreach Branch ("PAOB"), National Program Chemicals Division, Office of Pollution Prevention and Toxics, until her retirement on March 31, 2014.

The Complaint does not clearly indicate the authority upon which Plaintiff relies for her claims. However, in subsequent filings, she clarified that she brings her claims pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16). Pl.'s Opp. at 1 ¶ 1, 2 ¶ 1. She specifically alleges "discriminating harassment" due to a hostile work environment. *Id.* at 2 ¶ 1.

Plaintiff submitted several exhibits with her Complaint, including an April 7, 2016 decision by the Equal Employment Opportunity Commission ("EEOC"), Compl. Exhibits ([ECF 1–1] at 7–12,[2] as well as a subsequent August 15, 2017 EEOC appellate opinion, Compl. Exs. at

---

[1] The current Acting EPA Director, Andrew Wheeler, is automatically substituted as Defendant in his official capacity for his predecessor pursuant to Fed. R. Civ. P. 25(d).

[2] The court references the ECF generated page-numbers in citing the plaintiff's Complaint Exhibits [ECF No. 1–1].

1

1–5. In the EEOC action, Plaintiff alleged that she was subject to a hostile work environment; specifically, she claimed discrimination based on her race, color, age, physical and mental disabilities, and retaliation for her EEO activity. *Id.* The EEOC granted summary judgment in favor of the EPA, and this decision was affirmed on appeal. *Id.* at 2, 6. In the instant matter, however, Plaintiff declares that her current claims are "not based on discrimination or retaliation on the basis of race, color, age, or disability . . . ." Plaintiff's Notice of Opposition ("Pl.'s Opp.") [ECF No. 12] at 1 ¶ 2. Instead, she brings only claims of "harassment pursuant to Title VII . . . ." *Id.* at 1–2.

Defendant has filed a Motion to Dismiss or Alternatively for Summary Judgment ("Def.'s Mot."), and Plaintiff has moved for summary judgment and for reconsideration [ECF No. 11] of the court's previous denial of her Motion to Appoint Counsel [ECF No. 9].

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motions for Reconsideration and for Summary Judgment are DENIED.

## I. FACTUAL BACKGROUND

### A. Defendant's Relevant Internal Policies

#### i. *Flexiplace Policy*

Pursuant to Defendant's "Flexiplace Policy," part-time or full-time telework, or "flexiplace," is available to an employee at the absolute discretion of the supervisor. *See* Def.'s ROI Ex. 18 at 7–8. There are three types of flexiplace. *Id.* The first is "regular flexiplace," which is non-medical, and is based on an employee's level experience, past job performance, and position responsibilities. *Id.* at 7. The second is "episodic" flexiplace, which is normally granted for short-term projects only. *Id.*

The third type of flexiplace is medical, for employees with temporary medical condition(s) who need to telework for no more than six months. *Id.* at 7-8; Def.'s Stmt. at 2 ¶ 5. An employee who wishes to continue a medical flexiplace agreement ("MFA") beyond six months must submit updated and sufficiently detailed medical documentation regarding the status of the employee's condition, and supporting the employee's request for continued telework allowance. *Id.*

        ii.      *Sick Leave Policy*

Defendant's sick-leave policy requires that an employee wishing to take sick leave notify her supervisor either (1) before, or as soon as possible after, the time she is scheduled to report for duty (normally not more than two hours), or (2) before having to leave work during normal duty hours due to illness. Def's Stmt. at 1–2 ¶ 4. An employee must "[r]equest approval of sick-leave for the absence and indicate, if possible when [she] expect[s] to be able to return to duty." *Id.* For absences of three workdays or less, an employee must complete a Standard Form ("SF") 71, which must be submitted through the Defendant's internal electronic-system, "Webforms." Def.'s Stmt. at 1–2. An employee who fails to follow this policy and procedure may be considered absent without leave ("AWOL"). Def.'s Stmt. at 2–3 ¶ 9.

**B. Factual History**

On or about January 4, 2013, Plaintiff requested permission to telework full-time for six months for medical reasons. Def.'s Stmt. at 2 ¶ 6. She submitted a doctor's note in support. *Id.* On January 7, 2013, Eric Winchester became Plaintiff's first level supervisor. Def.'s Stmt. at 1 ¶ 3. Shortly thereafter, Winchester informed Plaintiff that, due to her telework request, and based on internal policy requirements, she had to complete an MFA. Def.'s Stmt. at 2 ¶ 7.

On January 29, 2013, Winchester sent Plaintiff the proposed MFA for her review and execution. Def.'s Stmt. at 2 ¶ 7. He informed her that the MFA would remain in place from January 4, 2013 (the date of her request) until July 4, 2013. *Id.* Plaintiff executed and returned the MFA on January 29, 2013, and Winchester approved it on January 30, 2013. Def.'s Stmt. at 2 ¶ 8.

On several occasions in early 2013, Plaintiff left voice messages or sent emails to Winchester unilaterally notifying him that she was taking sick leave. Def.'s Stmt. at 2 ¶ 9. In response, Winchester emailed Plaintiff on March 28, 2013, reminding her of the sick-leave policy and procedures, and warning her that if she did not comply she would be charged AWOL. Def.'s Stmt. at 2–3 ¶ 9. He specifically reminded her that she must obtain his approval within the designated time and through the appropriate internal channels. Def.'s Stmt. at 2–3 ¶ 9.

On June 18, 2013, Plaintiff emailed Wendy Lawrence, Labor and Employee Relations Specialist, regarding her existing MFA. Def.'s Stmt. at 3 ¶ 11. Following this exchange, Lawrence conferred with Winchester, and instructed him to send Plaintiff a "return to duty letter," because Plaintiff's MFA expired on July 4, 2013. Def.'s Stmt. at 3 ¶ 12. In an email on June 24, 2013, Winchester reminded Plaintiff of her sick leave expiration date, and told her that, pursuant to EPA policy, she would be required to submit updated medical documentation by July 3, 2013 if she sought an extension of her MFA beyond six months. Without an updated MFA, he would not be able to approve her teleworking beyond July 5, 2013  He also told her that if she did not seek to extend her MFA, she was expected to return to work by July 9, 2013, and that if she did not do so or have an approved extended MFA in place, she would be considered "AWOL." *Id.* Finally, he told her that, if eligible, she could request reasonable accommodations

through William Haig, the National Reasonable Accommodation Coordinator. Def.'s Stmt. at 3 ¶ 12.

On June 25, 2013, Plaintiff responded by email, stating that she was under the (incorrect) assumption that her MFA expired on July 30, 2013. Def.'s Stmt. at 4 ¶ 14. She indicated that she was unable to return to her work station and felt that she could no longer continue to work with Winchester. *Id.* A few hours later, Plaintiff again emailed Winchester, informing him that she wanted to request a reasonable accommodation and that she would contact Haig. Def.'s Stmt. at 4 ¶ 15.

Later that evening, Plaintiff again emailed Winchester, stating, "[h]ere is my doctor slip and I will be using my sick-leave and than [sic] my annual leave. I will also continue to take my compressed days off." Def.'s Stmt. at 4 ¶ 16. The doctor's note indicated simply that Plaintiff was "unable to work at this time." Def.'s Stmt. at 4 ¶ 16. The following morning Plaintiff called Winchester and again informed him that she intended to use her sick leave. Def.'s Stmt. at 4 ¶ 19. Later that same day, she again emailed Winchester and told him that her doctor told her she could not work until her next appointment on July 26, 2013, and she would be using sick leave until then. Def.'s Stmt. at 4 ¶ 20. She also said that while she was on leave she would not be checking her email, and that although she had requested a reasonable accommodation, since she could not get the necessary medical documentation until her medical appointment, she was withdrawing her accommodation request until that time. *Id.* Plaintiff also told Haig that she would be putting her accommodation request "on-hold." Def.'s Stmt. at 4 ¶ 21.

On June 25, 2013, Plaintiff contacted the Office of Civil Rights (OCR), alleging that Winchester had discriminated against her and harassed and threatened her starting June 24 and June 25, 2013. Def.'s Stmt. at 4 ¶ 18. Defendant submitted Winchester's sworn testimony that

5

he was completely unaware of Plaintiff's EEO activity and contact with OCR until sometime after June 28, 2013. Def.'s Mem. at 11 ¶ 1. He also stated that he did not know of Plaintiff's prior EEO activity. Def.'s ROI Aff. B at 6, 8, 12.

On June 27, 2013, Winchester emailed Plaintiff, asking whether her doctor's note meant she could not (1) physically return to work at her duty station, or (2) work in any capacity, including telework. *Id.* He also indicated that it appeared she had not followed proper sick leave procedures; she had not requested his approval, had not submitted a SF-71, and had not submitted her leave request through Webforms, and that she would be charged AWOL for June 26, 2013, and for any day that she did not follow the correct leave procedures. *Id.* Later that same day, he charged Plaintiff as AWOL for June 26, 27, and 28, and notified her by email. Def.'s Stmt. at 5 ¶ 24. Plaintiff responded that she had provided an SF-71 on June 26, 2013. Def.'s Stmt. at 5 ¶ 26. Winchester searched Webforms and his emails but did not find a SF-71 for June 26–28, 2013. Def.'s Stmt. at 5 ¶ 27. It appears that Plaintiff used "PeoplePlus," a separate but related internal channel, to submit her leave request; there is no indication that she submitted it through Webforms. Def.'s Stmt. at 5 ¶ 27; Pl.'s Opp. at 2 ¶ 1. Plaintiff claims she was unable to do so because she used a personal computer, rather than a work laptop. Pl.'s Opp. at 2 ¶ 1.

Two days later, on June 29, 2013, Plaintiff attempted to submit an SF-71 through Webforms but was unable to log in to the system because her password had expired. Def.'s Stmt. at 5 ¶ 28. Plaintiff notified Winchester that she was unable to log in and that she would contact IT on July 1 for assistance. Pl.'s Surreply Exs. at 51. She also requested additional annual leave, sick leave, and holiday leave for various dates in July. *Id.* at 59. Given Plaintiff's inability to log into Webforms, Winchester granted the requests for leave in July, but made clear

that he was not approving her prior requests for leave, including the dates for which she had been charged AWOL (June 26–28). *Id.* He also told Plaintiff that he would need to evaluate internal policy regarding her prior sick leave requests and her MFA proposals. *Id.*

On July 1, 2013, Plaintiff was able to submit her SF-71 through Webforms for June 26–28, 2013. Def.'s Stmt. at 5 ¶ 29. On July 3, 2013, she also submitted a doctor's note indicating that she was sick and unable to work on June 26–28, 2013. Def.'s ROI Aff. A at 100.

On July 8, 2013, Plaintiff submitted three updated flexiplace agreements to Winchester; a regular flexiplace agreement, an episodic flexiplace agreement, and a new MFA. Def.'s Stmt. at 6 ¶ 31. Plaintiff's new MFA requested permission to telework whenever the temperature registered above 90 degrees. Def.'s Stmt. at 6 ¶¶ 33, 35. It is unclear whether this new MFA was meant to supplant or supplement the recently expired (full-time) MFA. *Id.* Plaintiff also went on extended leave around this time. Def.'s Stmt. at 6 ¶ 32.

On July 25, 2013, Winchester wrote Plaintiff requesting medical documentation for her request to extend her full-time MFA. Def.'s Stmt. at 6 ¶ 33. He specifically asked for a physician's statement regarding the impact of her condition on her ability to work and to complete the tasks associated with her position. *Id.* Plaintiff responded with questions, to which Winchester replied on July 31. Def.'s Stmt. at 6 ¶ 35. He explained that his request for additional medical documentation was in response to Plaintiff's late June/early July emails claiming that she was unable to work and requesting an extension of her existing MFA. He also explained that her new MFA request, to telework in hot weather, did not appear to be a temporary request, and therefore it would be more appropriately processed as a reasonable accommodation. Finally, he formally approved her proposed regular and episodic flexiplace agreements. *Id.*

7

Plaintiff responded on August 1, 2013, requesting that her full-time MFA be extended to August 12, 2013, and submitting a doctor's note stating that she was unable to work from July 26–August 27, 2013. Def.'s Stmt. at 6 ¶ 36. Winchester then asked Plaintiff to submit medical documentation showing that she was cleared for work and justifying the necessity for telework. Def.'s Stmt. at 6–7 ¶ 37. He reminded her that her second MFA request, regarding telework in hot weather, was better addressed as a reasonable accommodation request. *Id.*

On August 28, 2013, Plaintiff requested an additional reasonable accommodation to adjust her arrival time and MFA when necessary. Def.'s Stmt. at 7 ¶ 38. On September 20, 2013 Winchester approved the requests, allowing Plaintiff to begin her workday at 7 am, to telework if the temperature went above 90 degrees, and to attend certain medical appointments. Def.'s Stmt. at 7 ¶ 38.

On January 7, 2014, Winchester informed Plaintiff that since she had provided a doctor's note regarding her June 26–28, 2013 absences, he would change her AWOL charge to sick leave. Def.'s Stmt. at 7 ¶ 39. Plaintiff retired on March 31, 2014. Def.'s Stmt. at 7 ¶ 41.

Most, if not all, of Winchester's actions described above were taken after consultation with Lawrence. Def.'s Stmt. at 2 ¶¶ 7, 9, 3 ¶ 11, 4 ¶ 22, 6 ¶ 33. Defendant has also provided examples of instances in which Winchester advised all PAOB staff of the leave and flexiplace policies. Def.'s Stmt. at 3 ¶ 10; 5 ¶ 25.

## II. STANDARD OF REVIEW

When a party moves to dismiss under Rule 12 for failure to state a claim upon which relief may be granted, and presents matters outside the pleading and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 12(b))

(internal quotation marks omitted). Defendant has presented matters outside the pleading which the court will consider, and therefore the court will treat the motion as one for summary judgment under Rule 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.*; *see also Laningham v. U.S. Navy*, 813 F. 2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

In employment discrimination cases, "the operative question . . . is whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer intentionally discriminated against the employee on the basis of [protected status].'" *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (citation and original alterations omitted). "[W]hen the plaintiff offers direct evidence of discriminatory intent, that evidence will 'generally entitle a plaintiff to a jury trial.'" *Id.* (citation omitted). In the absence of direct evidence, however, discrimination cases are governed by the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Id.* Once the plaintiff establishes a *prima facie* case, the defendant must produce

evidence that the challenged employment actions were taken for a legitimate, non-discriminatory reason. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998). If the defendant does so, "the presumption . . . raised by the *prima facie case* is rebutted and drops from the case." *Id.* at 1289 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)) (internal quotation marks omitted). At this juncture, the burden reverts to the plaintiff to show that a reasonable jury could infer that the proffered legitimate reason was false, and that the defendant acted with discriminatory or retaliatory intent. *Id.*

Finally, the court is mindful that *pro se* pleadings must be liberally construed, as they are held to "less stringent standards than formal pleadings drafted by trained lawyers." *Budik v. Dartmouth–Hitchcock Med. Ctr.,* 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)) (internal quotation marks omitted). This liberal standard, on the other hand, "is not . . . a license to ignore the Federal Rules of Civil Procedure." *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014) (internal citations and quotation marks omitted). "Accordingly, in the context of Rule 56, a '*pro se* plaintiff must meet his burden of proving that there exists a genuine dispute as to a material fact to survive a motion for summary judgment.'" *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 61 (D.D.C. 2015) (citation omitted).

### III. DISCUSSION

#### A. Hostile Work Environment

Plaintiff alleges that Winchester's continued harassment created a hostile working environment, and as a result, she was forced to take leave, experienced anxiety, and felt slandered. Compl. at 2–3.

The D.C. Circuit has "recognized a special type of retaliation claim based on a 'hostile work environment.'" *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (citation omitted).

Such a claim may arise when several individual acts of retaliation that "may not be actionable on their own . . . become actionable due to their cumulative effect." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (internal quotation marks and alternations omitted)). These "constituent acts must be adequately linked such that they form a coherent hostile environment claim. For example, they might involve the same type of employment actions, occur relatively frequently, and be perpetrated by the same managers." *Baird*, 792 F.3d at 168–69 (citations and alterations omitted).

In a hostile work environment claim, a plaintiff must show that an employer engaged in 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* (internal quotation marks omitted).

Here, Plaintiff has alleged that: (1) Winchester consistently requested updated medical documentation, *see* Compl. at 1; (2) Winchester sent her correspondence while she was on leave, *see* Compl. at 1–2; (3) she should not have been considered AWOL for June 26–28, *see* Compl. at 1–2; (4) Winchester intentionally delayed approving her MFA, causing her to take unwanted

11

leave and affecting her retirement plans, *see* Pl.'s Surreply at 3; and (5) Defendant failed to provide her with a laptop for telework. *See* Pl.'s Opp. at 2.

Plaintiff's arguments regarding the work laptop appear to shift throughout her pleadings. Plaintiff first alleged that she had difficulty completing her work and submitting leave forms because she was not provided with a laptop for telework. Pl.'s Opp. at 2. However, in her Surreply, she admitted that she did, in fact, receive a work laptop, but that she left it at her work station and therefore used her personal computer instead. Pl.'s Surreply at 2.

The court finds that Plaintiff's cited examples do not constitute continued harassment and did not create a hostile working environment. Whether considered alone or cumulatively, the alleged acts do not meet the "demanding standards" for such claims. *Sewell v. Chao*, 532 F. Supp. 2d 125, 141–42 (D.D.C. 2008).

Defendant has proffered legitimate, non-discriminatory reasons, supported by affidavits, documents and factual background, for Winchester's decisions and actions. With regard to Plaintiff's claim that Winchester consistently requested updated medical information, Defendant points out that those requests were based on internal policies and procedures. Def.'s Stmt. at 2 ¶ 5. Winchester requested the information when Plaintiff's existing MFA was set to expire, or when she had submitted insufficient information. *See, e.g.*, Def.'s ROI Exs. 6, 8, 9 at 18–19. He also requested additional medical documentation when Plaintiff appeared to have modified her MFA request, or when she had indicated a change in her ability to work and/or telework. *Id.* Very shortly after the required information was received, Defendant timely processed and approved Plaintiff's MFA requests. *Id; see also* Def.'s Stmt. at 4 ¶ 17, 7 ¶ 38. In fact, it does not appear that any of Plaintiff's requests were denied, at least for the time relevant to this case.

Moreover, Plaintiff fails to explain why it was harassment for her immediate supervisor to contact her while she was on leave. *See* Compl. at 1–2; Pl.'s Opp. at 1. It comports with common sense that Winchester should be able to contact her when appropriate and necessary, especially given that his contacts with Plaintiff were not excessive. He generally contacted her to check in, remind her of impending deadlines, request supplemental information, answer her questions, and inform her when she had failed to follow internal policies. *See, e.g.,* Def.'s ROI Ex. 6; Def.'s ROI Ex. 8. Based on the evidence in the record, Winchester seems to have attempted to timely respond to her requests, process her proposals, and consult with Human Resources, Lawrence, and/or Haig.

It is also clear from the record that Plaintiff was deemed AWOL for June 28–29 due to her failure to comply with the sick-leave policy. Def's Stmt. at 1–2, 2–3 ¶ 9. Plaintiff did not initially submit an SF-71 through Webforms (any attempt she may have made was unsuccessful), and therefore failed to get timely approval for three days of leave. Def.'s Stmt. at 5 ¶ 27.

Plaintiff also alleges, in passing, that she was treated differently than other employees. Compl. at 1–2. But she does not proffer any facts or evidence to support this claim, and the actions she claims Defendant took in response to her leave requests, even if assumed to be true, do not constitute discriminatory behavior. *See Bell v. Gonzales*, 398 F. Supp. 2d 78, 92; *see also Stewart v. White*, 61 F. Supp. 3d 118, 130–31 (D.D.C. 2014) (holding that employer's proffered reasons for denying employee advanced sick leave and charging her with AWOL were not pretext for discrimination).

Furthermore, once Plaintiff provided the required documentation, Defendant retroactively changed the three June AWOL charges to approved sick leave. Def.'s Stmt. at 7 ¶¶ 39–40. Plaintiff has since been compensated for those days, which makes any claim for relief moot. *Id.*;

13

*see also Stewart*, 61 F. Supp. 3d. at 130–131 ("As to the AWOL charges, the plaintiff does not dispute that after she complied with defendant's [internal policies] for the admittedly unscheduled leave, her status for all of those days . . . was converted from AWOL to LWOP . . . thereby rendering any issues surrounding the alleged adverse AWOL designation moot."). While this decision was not made until January 2014, the six-month delay does not in and of itself constitute harassment or a hostile work environment. Def.'s Stmt. at 7 ¶ 34; *see also Bell*, 398 F. Supp. 2d at 92 ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").

Plaintiff also essentially admits that she was unable to properly submit her leave requests because she left her work laptop at work.[3] Def.'s Stmt. at 5 ¶ 27; Pl.'s Opp. at 2 ¶ 1.

Finally, a review of the correspondence submitted by both parties fails to reveal any hostile interactions between them. *See, e.g.,* Def.'s ROI Ex. 6; Def.'s ROI Ex. 8; Def.'s ROI Ex. 9 at 12–13. Winchester's tone is generally professional and explanatory, and nothing in the record constitutes a "threat." Simply advising Plaintiff of the potential repercussions of her failure to follow agency policy is not, in and of itself, hostile. *See, e.g.*, *Beckwith v. Ware*, 174 F. Supp. 3d 1, 5 (D.D.C. 2014) (citing *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94) (finding that "the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context"). The court finds that Plaintiff has not proffered facts or evidence indicating that Defendant's conduct was severe nor pervasive.

### B. Predicate Discrimination

---

[3] Defendant submitted an affidavit and corroborating documentation showing that Plaintiff was provided a work laptop from August 6, 2009 through April 1, 2014. Def.'s Reply. at 2; Def.'s Reply Ex. 19.

A hostile work environment is not a stand-alone cause of action under Title VII; a plaintiff must establish as a predicate "some linkage between the hostile behavior and the plaintiff's membership in a protected class," *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009); *see also Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003), or establish a connection between the hostile environment and a protected activity, *see Bloom v. McHugh*, 828 F. Supp. 2d 43, 59 (D.D.C. 2001) (citing *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environment claim can amount to retaliation under Title VII.").

Plaintiff appears to be a member of four protected classes related to her race, gender, age, and disability. Compl. Exs. at 1–5. Although she has stated that her claims do not involve discrimination relating to race, age, gender, or disability, Pl.'s Opp. at 1 ¶ 1–2, in an abundance of caution the court reviewed the record and finds no connection between her membership in the protected class(es) and the alleged hostile work environment. *See Na'im*, 626 F. Supp. 2d 63 at 73 ("Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class.") (citing *Baloch*, 550 F.3d at 1201).

Plaintiff provides no evidence to support a discrimination claim based on status, while Defendant has provided detailed, non-discriminatory reasons for its actions. Therefore, the burden shifts back to the Plaintiff, who must "seize the "opportunity to discredit the employer's explanation." *Smith v. Jackson*, 539 F. Supp. 2d 116, 136 (D.D.C. 2008) (internal citations and quotation marks omitted). Plaintiff has not done so. She also fails to establish a connection between the alleged harassment and a protected activity. While Plaintiff states that she filed an

EEO complaint on August 28, 2013, Defendant provided evidence that Winchester was unaware of Plaintiff's EEO activity or her correspondence with OCR before or when he decided to declare Plaintiff AWOL. Def.'s Mem. at 11 ¶ 1. In fact, Plaintiff's EEO complaint was filed well after Winchester charged Plaintiff AWOL, making it impossible for him to have done so in retaliation for her EEO activity. *Id.*; *see also* Def.'s Reply Ex. 1; Compl. Exs at 1–5.

Plaintiff has failed to adduce facts establishing a pattern of harassment or a hostile work environment. *See Fischbach v. D.C. Dep't of Corrections*, 86 F. 3d 1180, 1183 (D.C. Cir. 1996). Likewise, she has not established the *prima facie* elements of a predicate discrimination or retaliation claim. *See Na'im*, 626 F. Supp. 2d at 73. Therefore, summary judgment is warranted.

## IV. PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff seeks reconsideration of the denial of her Motion to Appoint Counsel. Plaintiffs in civil cases generally do not have a constitutional or statutory right to counsel. *See Willis v. F.B.I.*, 274 F.3d 531, 532–33 (D.C. Cir. 2001); *Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981). If a plaintiff is proceeding *in forma pauperis*, the court is authorized to appoint counsel under 28 U.S.C. § 1915(e)(1), but it is not obliged to do so unless a plaintiff demonstrates that such exceptional circumstances exist that the denial of counsel would result in fundamental unfairness. *See Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986). "Whether exceptional circumstances exist requires an evaluation of the type and complexity of each case, and the abilities of the individual bringing it." *Id*; *see also* Local Civil Rule 83.11(b)(3) (listing factors). As the court noted in denying Plaintiff's motion, in a Title VII action, it may appoint counsel "[u]pon application by the complainant and in such circumstances as the court may deem just." Ord. Den. Mot. to Appt. Cnsl. [ECF No. 9] (D.D.C. March 1, 2018) at 2 ¶ 1; 42 U.S.C. § 2000e5(f)(1). In reviewing such an application, the court considers "(1) the ability of the plaintiff

16

to afford an attorney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel." *Ficken v. Alvarez*, 146 F.3d 978, 979–80 (D.C. Cir. 1998) (quoting *Poindexter v. FBI*, 737 F.2d 1173, 1185 (D.C. Cir. 1984)). *See* Ord. Den. Mot. to Appt. Cnsl. at 2 ¶ 1.

In denying the motion, the court found that Plaintiff had not set forth her efforts to secure counsel, and that it was premature to appoint counsel. *Id.* The court also ruled that it would not provide counsel before it resolved Defendant's pending motion for dispositive relief. *Id.* at 2.

Plaintiff's Motion for Reconsideration provides little additional information. She indicates that she exists on a small retirement income but does not provide any information regarding her efforts to obtain counsel. The court also finds that, despite the lack of *prima facie* evidence, Plaintiff has ably represented herself thus far in both administrative proceedings and the instant matter.

Moreover, Plaintiff has not shown that her claims are particularly complex or that any greater interest of justice would be served by appointing counsel in this case than in any other *pro se* case. *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 47 (D.D.C. 2017); *see also* Local Civil Rule 83.11(b)(3). Therefore, Plaintiff's Motion for Reconsideration is denied.

## V. PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT

Finally, in her Opposition, Plaintiff asks the court to "grant summary judgment in Plaintiff's favor for harassment and failing to provide employee with the government computer." Pl.'s Opp. at 2 ¶ 1. Summary judgment is appropriate only when the moving party proves that there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. at 322. The court finds that Plaintiff has failed to demonstrate, in accordance with the applicable federal and local rules, that she is entitled to summary judgment with respect her

claims. Indeed, she has not set forth specific argument or even identified any material facts in accordance with Rule 56 §§ (c), (e) of the Federal Rules of Civil Procedure and Local Civil Rule 7(h). Plaintiff attaches numerous documents to her surreply, most of which were also submitted by Defendant. A review of those documents, as well as analysis of the relevant legal standards and the parties' arguments reveals that there is no disputed issue of material fact. *Sun v. D.C. Government*, 133 F. Supp. 3d 155, 163 (D.D.C. 2015) (holding that "[w]hen, as here, both parties file motions for summary judgment, each must carry its own burden under the applicable legal standard.").

## VI. CONCLUSION

For all the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motions for Reconsideration and for Summary Judgment are DENIED. A separate Order accompanies this Memorandum Opinion.

Date: September 28, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge